NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

```
_____
                               :
JAMES E. BLEVINS,              :
                               :
          Plaintiff,           :    Civil No. 05-5261 (RBK)
                               :
     v.                        :    OPINION
                               :
SEW EURODRIVE, INC.            :
                               :
          Defendant.           :
_____:
```

**KUGLER**, United States District Judge:

This matter comes before the Court on motion by defendant SEW Eurodrive, Inc. ("SEW"), for summary judgment on the claims of pro se plaintiff James E. Blevins ("Plaintiff"). For the reasons set forth below, SEW's motion will be granted.

**I.   Background**

Plaintiff is a former employee of SEW, a manufacturer and distributor of industrial gear drives. Beginning on July 2, 2001, until his termination on October 20, 2004, Plaintiff worked as an Accounts Payable Clerk in SEW's Bridgeport, New Jersey assembly center. At the time of the incidents alleged in Plaintiff's Complaint, Plaintiff reported to SEW's Office Administrator, Bernadette Jones.

This litigation arises from the circumstances surrounding

Plaintiff's termination.  Plaintiff alleges that he was terminated in violation of New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq. in retaliation for having exercised his right to file an assault charge against SEW's Office Administrator.  SEW counters that Plaintiff's termination was warranted following a long history of hostile and disrespectful conduct towards his supervisors.  SEW further asserts that Plaintiff was repeatedly counseled to improve his conduct.  The relevant chronology of events is as follows:[1]

In his position with SEW, Plaintiff was responsible for reconciling accounts payable and ordering/receiving goods for the company.  (Def.'s Br. at 3.)  Additionally, Plaintiff was assigned the task of invoicing orders shipped and routing freight shipments.  (Def.'s Br. at 4.)  On Monday, October 11, 2004, the Shipping/Warehouse Manager at SEW changed the shipping instructions and carrier to one of SEW's preferred carrier even though Plaintiff had previously designated a non-preferred carrier.  Two days later, on October 13, 2004, Plaintiff confronted SEW's Office Administrator, Bernadette Jones, about the change in carrier.  Specifically, Plaintiff refuted his ability to amend the purchase order to reflect the new carrier.  When Ms. Jones told Plaintiff to complete the task assigned,

---

[1] As the Court is presently considering SEW's motion for summary judgment, it will view those contested facts in a light most favorable to Plaintiff.

2

Plaintiff stated that "he could not do the impossible" and got up to leave Ms. Jones's office. (Amended Compl. at 2-3.)  According to Plaintiff, Ms. Jones then got up and ran around her desk, collided with Plaintiff, grabbed his forearm and yanked it backwards from the doorknob and direct him not to leave her office.  (Amended Compl. at 3.)  Plaintiff immediately told Ms. Jones to take her hands off him.  (Amended Compl. at 3.)  According to Mr. Blevins, Ms. Jones immediately released his arm; he then left her office.

Following the events in Ms. Jones's office, Plaintiff reported the incident to William Jastrebski, SEW's Customer Service Manager.  After Plaintiff returned to Mr. Jastrebski's office a second time to discuss the matter further with Ms. Jones, Mr. Jastrebski sent Plaintiff home, "because he was too upset to have a rational conversation." (Def.'s Br. at 8.)

The following day, Plaintiff filed a municipal complaint against Ms. Jones for assault and battery.  (Amended Compl. at 3.)  Upon arriving at work, Plaintiff then reported to Mr. Jastrebski that he had filed a complaint against Ms. Jones.  (Amended Compl. at 3.)  Despite knowledge that SEW's General Manager, Michael Zlockie, wanted Plaintiff to remain at the office until Zlockie returned from his trip to company headquarters in South Carolina that afternoon, Plaintiff left the office at approximately 11:22 a.m.  (Def.'s Br. at 8.)

Upon his return to the Bridgeport facility, Mr. Zlockie commenced an investigation of the incident involving Plaintiff and Ms. Jones. As part of this investigation, Mr. Zlockie requested that several employees submit a written statement about their encounters with Plaintiff on the date of the incident. (Def.'s Br. at 8.) The next day, October 15, 2004, Mr. Zlockie brought Plaintiff into a meeting with himself, Mr. Jastrebski and Ms. Jones. During this meeting, Mr. Zlockie informed Plaintiff that he had two signed statements by Plaintiff's fellow employees attesting to Plaintiff's disruptive behavior on October 13, 2004. Moreover, Mr. Zlockie told Plaintiff that he did not believe that Plaintiff had filed a complaint against Ms. Jones with the police. Mr. Zlockie then suspended Plaintiff for the remainder of the day and the following Monday. (Amended Compl. at 3.) The local police arrived at SEW's Bridgeport facility later that afternoon to serve a complaint upon Ms. Jones.

On October 18, 2004, Plaintiff received a voice mail from Mr. Zlockie indicating that he was not to report for duty on October 19, 2004 because investigation of the incident with Ms. Jones was still ongoing. When Plaintiff returned to work on Wednesday, October 20, 2004, he was immediately taken into the conference room with Mr. Zlockie and Mr. Jastrebski. Mr. Zlockie then read Plaintiff his termination letter, which stated that Plaintiff was being terminated based on his ongoing disruptive

4

conduct. Mr. Zlockie cited Plaintiff's negative and indecent remarks to co-employees about Ms. Jones and Mr. Whitacre, his continued remarks to co-employees about the October 13th incident, his unwarranted decision to leave work without supervisory permission on October 14th in direct contravention to Mr. Zlockie's request, and his ongoing disruptive and negative behavior in the workplace.² Plaintiff responded that he believed that the true reason for his termination was his filing of a municipal complaint against Ms. Jones. Mr. Zlockie subsequently directed Plaintiff to clear all of his belongings from his desk and escorted him from the Bridgeport facility.

As a result of his termination, Plaintiff, proceeding pro se, filed a Complaint against SEW on October 4, 2005 in the Superior Court of New Jersey, Gloucester County. On November 4, 2005, SEW removed the action to this Court on the basis of both diversity jurisdiction and federal question jurisdiction. Shortly thereafter, on November 22, 2005, SEW filed a motion to

---

² In SEW's brief, it recounts several performance reviews in which Plaintiff was warned about his behavior in the work place. SEW specifically states, "For the most part, Mr. Blevins satisfactorily performed his job duties at SEW. However, from the start of his employment, Mr. Blevins routinely demonstrated an unwillingness to comply with his supervisors' directives, and further, demonstrated direct hostility and threatening behavior towards his supervisor." (Def.'s Br. at 4.) To support this claim, SEW cites performance reviews from October 2, 2001, January 2, 2002, January 3, 2003, July 2, 2003, and July 15, 2004. Additionally, SEW notes Plaintiff's acknowledgment of a conversation with Mr. Zlockie regarding Plaintiff's disrespectful comments about supervisors. (Def.'s Br. at 4-7.)

dismiss the Complaint for failure to state a claim upon which relief can be granted. This Court granted in part and denied in part SEW's Motion on April 25, 2006. As part of its Order, this court afforded Plaintiff the opportunity to amend his Complaint to state a claim under CEPA. Plaintiff filed his Amended Complaint, alleging that he was terminated in violation of CEPA, on May 1, 2006. On November 20, 2006, SEW filed the motion for summary judgment presently before this Court.

**II.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to

establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003). "If the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court must enter summary judgment in favor of the moving party." Heffron, 270 F. Supp. 2d at 69 (citing Anderson, 477 U.S. at 249-50).

**III. Analysis**

**A.   CEPA's Burden-Shifting Framework**

Plaintiff alleges that his termination constituted retaliation in violation of CEPA, N.J.S.A. 34:19-2(e).  CEPA was

enacted to "protect employees who report illegal or unethical work-place activities." Barratt v. Cushman & Wakefield of New Jersey, Inc., 144 N.J. 120, 127 (1996). Similar to claims filed pursuant to federal laws prohibiting employment discrimination, CEPA claims are analyzed under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Kolb v. Burns, 320 N.J. Super. 467, 478-79 (App. Div. 1999). Plaintiff must first establish the four-factor prima facie case: (1) he reasonably believed that his employer's conduct was violating either a law or regulation promulgated pursuant to law; (2) he performed a whistle-blowing activity described in N.J.S.A. 34:19-3a, c(1), or c(2); (3) his employer took an adverse employment action against him; and (4) there is a causal connection between the whistle-blowing activity and the adverse employment action. Kolb, 320 N.J. Super. at 476; Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 92 (3d Cir. 1999). Where plaintiff's alleged whistle-blowing addressed a clear mandate of public policy as described in N.J.S.A. 34:19-3a(c)(3), the plaintiff must first articulate the existence of a clear mandate of public policy which the employer's conduct violates. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187 (1998).

Once the plaintiff establishes these factors, "the burden of production is shifted to the employer to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory

reason for the adverse employment action." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449 (2005).  The burden of production then returns to plaintiff to demonstrate that the proffered reasons were merely pretextual. Id.  While the plaintiff need not provide direct evidence that his employer acted for discriminatory reasons, he must "point to sufficient evidence to support an inference that the employer did not act for its proffered non-discriminatory reasons." Id.  This "burden merges with the plaintiff's ultimate burden of persuading the court that she or he was subjected to intentional discrimination." Id.

In the present matter, Defendant contends that Plaintiff has failed to establish a causal connection between Plaintiff's alleged "whistle-blowing activity" and the adverse employment action, and therefore has not established his prima facie case under the CEPA analysis.[3]  Alternatively, Defendant contends that even if Plaintiff does establish his prima facie case, summary judgment is appropriate because Plaintiff cannot offer sufficient evidence that the reasons offered for his termination were a pretext for retaliation.

**B.   Prima Facie Case - Causal Connection**

Having established that he was subjected to a retaliatory

---

[3] SEW does not dispute that Plaintiff has met his burden in establishing the first three elements of his CEPA claim.

action under CEPA (termination), Plaintiff must provide some evidence of a causal connection between the action and the alleged "whistle-blowing." Kolb, 320 N.J. Super. at 476. "A CEPA plaintiff can prove causation by presenting either direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation." Zaffuto v. Wal-Mart Stores, Inc., 130 Fed. Appx. 566, 569 (3d Cir. 2005). Taking into account that CEPA is remedial legislation, and therefore must be "construed liberally to effectuate its important social goal," Feldman v. Hunterdon Radiological Associates, 187 N.J. 228, 239 (2006) (citations omitted), this Court finds that Plaintiff establishes a causal connection sufficient to meet the prima facie prong of his CEPA claim. Specifically, the temporal proximity between the time of the protected whistle-blowing activity and the employer's adverse action under CEPA provides an evidentiary basis that permits an inference of causation in the prima facie stage. See Schlinchtig v. Inacom Corp., 271 F. Supp. 2d 597, 612 (D.N.J. 2003). Simply put, this is one of those "rare cases" where the decision to discharge takes place so soon after the discovery of the participation in protected conduct that the inference of discrimination is impossible to ignore. Bowles v. City of Camden, 993 F. Supp. 225, 264 (1998). See also Schlinchtig, 271 F. Supp. 2d at 612 ("[T]he temporal proximity between an employee's termination and his protected activity may permit an

10

inference of causation where the relatively short interval between the two is 'unusually suggestive' of retaliation.").

**C.  Legitimate Non-Discriminatory Reason**

Having established that Plaintiff has met his burden in establishing a prima facie case under CEPA, the burden of production now shifts to the employer to articulate a "legitimate nondiscriminatory reason for the adverse employment decision." Fleming v. Correctional Healthcare Solutions, Inc., 164 N.J. 90, 100 (2000).  SEW's support for its motion for summary judgment provides ample evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff.  Specifically, SEW successfully satisfies its burden of production by arguing that Plaintiff was terminated due to his ongoing negative behavior in the workplace and his failure to comply with the request of his supervisors. (Def.'s Br. at 4-7, 10-11.)  Additionally, SEW satisfies its burden when it attributes Plaintiff's termination to "[his] disruptive, abusive, and threatening comments about SEW management personnel on October 13th and 14th, and his failure to remain on the premises as directed by his superior and leaving the facility without notice or authorization." (Def.'s Br. at 19.)  Accordingly, Plaintiff now bears the burden of establishing by a preponderance of the evidence that SEW's explanation was not the true reason for the challenged action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

**D. Pretext**

In order to survive summary judgment in the pretext stage of the McDonnell-Douglas analysis, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Zaffuto, 130 Fed. Appx. at 569 (quoting Kolb, 320 N.J. Super at 478) (citations omitted)).[4]

In this stage of the analysis, this Court will look beyond the mere temporal relationship between the protected activity and the employer's adverse action and engage in a context-specific analysis to determine the employer's motive and whether Plaintiff's protected activity was, indeed, the cause of his termination. Accordingly, while Plaintiff's circumstances presented sufficient evidence to meet the relatively easy burden necessary to establish causation in a prima facie case, they do not necessarily demonstrate that SEW's reasons for his termination were pretextual.

---

[4] The Third Circuit noted in Zaffuto, "[a]s recognized by the New Jersey courts, the prima facie element of causation and the element of causation in the subsequent ultimate proof stage of the case are often factually inseparable and therefore a court may rely on evidence provided in the early phase in resolving the latter." 130 Fed. Appx. at 569 (citing Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276 (App. Div. 2001)).

12

Upon review of the record, it is clear that there were significant preceding and intervening causes for Plaintiff's termination that confirm that SEW's proffered legitimate reasons are worth of credence. While viewing the facts in a light most favorable to Plaintiff, it is irrefutable that prior to his termination, Plaintiff was warned, both verbally and in writing, that his disruptive and threatening behaviors would jeopardize his employment with SEW. The record includes several of Plaintiff's performance reviews prior to the date he engaged in his protected activity which support this conclusion. Moreover, at around the time that Plaintiff engaged in his protected activity, he continued to engage in disruptive behavior within the office and failed to follow his supervisor's orders to remain at the office to discuss the matter with him. In sum, the record in this case reflects that SEW had sufficient reasons to terminate Plaintiff, and Plaintiff has done little to show these reasons to be without merit. This Court declines to allow Plaintiff to use the filing of a Complaint against his supervisor as a means to protect himself from being terminated for the reasons proffered by SEW; indeed, the pretext stage of the CEPA analysis is formulated to protect against such a conclusion. Accordingly, this Court finds that Plaintiff is unable to show that SEW's proffered reasons for Plaintiff's termination are a mere pretext for retaliation.

**IV.  Conclusion**

    Based on the foregoing reasoning, this Court will grant SEW's motion for summary judgment.  The accompanying Order shall issue today.


Dated: <u>May 15, 2007 </u>          <u> s/ Robert B. Kugler        </u>
                                          ROBERT B. KUGLER
                                          United States District Judge